UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CITGO PETROLEUM CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-0503-CVE-PJC |
| | ) | |
| HOME SERVICE OIL COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court is the Motion of Home Service Oil Company to Dismiss Plaintiff's

Complaint for Lack of Personal Jurisdiction or in the Alternative, Motion to Dismiss or Transfer for

Improper Venue (Dkt. ## 12, 15).  Defendant Home Service Oil Company (HSO) argues that it is

not subject to personal jurisdiction in Oklahoma and this Court is not a proper venue for this case

under 28 U.S.C. § 1391.  Plaintiff CITGO Petroleum Corporation (CITGO) responds that the

contract giving rise to its claims for breach of contract, contribution, and indemnification includes

a forum selection clause in which defendant consented to jurisdiction in Oklahoma.

### I.

On December 27, 1990, CITGO and HSO entered a Distributor Franchise Agreement (DFA)

providing that HSO could purchase CITGO products for resale at service stations operated by HSO.

The DFA required HSO to purchase comprehensive general liability insurance, "including

contractual liability and products-completed operations liability . . . having a minimum combined

single limit of ONE MILLION DOLLARS ($1,000,000) each occurrence (or the equivalent) for

bodily injury and property damage, including personal injury." Dkt. # 25, Ex. 1(A), at 14-15.  The

DFA also contains an indemnification provision related to personal injury or death suffered by a third party:

> (a) Franchisee hereby releases and agrees to indemnify and hold CITGO, its agents, servants, employees, successors and assigns, harmless from and against any and all claims, suits, losses, obligations, liabilities, injuries, and damages, including attorneys' fees and costs of litigation, for death, personal injury, property damage or other claim arising out of any failure by Franchisee to perform, fulfill or observe any obligation or liability of Franchisee set forth herein or any negligent act or omission by Franchisee or any cause or condition of any kind directly or indirectly arising in connection with the use, occupancy, maintenance, upkeep, repair, replacement or operation of any place of business, service station or marketing premises (including but not limited to adjacent sidewalks, drives, curbs, signs, poles and all other fixtures and equipment located thereon) which place of business, service station or marketing premise is or was either directly or indirectly owned, leased, operated, supplied, franchised, or licensed by or through Franchisee.

Id. at 13.  The DFA also states that it shall "be governed by the laws of the State of Oklahoma."  Id. at 16.  The DFA automatically renewed every three years and the parties operated under the terms of the DFA until 2005.

The parties executed a Marketer Franchise Agreement (MFA) on June 9, 2005, and CITGO alleges that the MFA superseded the DFA.  Dkt. # 2, at 3.  CITGO agreed to provide HSO predetermined amounts of petroleum products and these amounts were greater than stated in the DFA.  Dkt. # 25, Ex. 1(G).  The MFA included similar insurance coverage and indemnification provisions, and stated that Oklahoma law governed the agreement.  However, the MFA also stated that "Marketer consents to jurisdiction and venue in the state and federal courts located within Oklahoma."  Id. at 10.

On July 2, 2005, William Edward Perkins was shot and killed at a service station operated by HSO and, on September 4, 2006, Derrick Cortez Williams, was fatally shot at the same service station.  The parents of Perkins and Williams filed separate lawsuits in Missouri state court against

2

the individual owners of the service station and CITGO, alleging that defendants negligently failed to protect customers from violent crime and CITGO negligently supervised the operation of the service station.  Dkt. # 2, at 4.  CITGO tendered a defense to the defendants in the state court lawsuits as required by the MFA but, in turn, CITGO demanded defense and indemnification from HSO.  CITGO alleges that HSO initially acknowledged that it was obligated to defend and indemnify CITGO but subsequently failed to provide a defense.  Id.  CITGO also claims that it learned that HSO failed to list CITGO as an additional insured on HSO's comprehensive commercial general liability policies.  Id. at 9-10.  CITGO settled both lawsuits on July 30, 2009, and claims that the settlements were "reasonable, prudent and made in good faith."  Id. at 10.

Before settling the lawsuits, CITGO filed a third-party complaint against HSO seeking indemnification and contribution in the underlying lawsuits.  See Dkt. # 12, Ex. 3.  CITGO filed a motion for partial summary judgment seeking attorney fees and costs for providing a defense to the individual owners of the service stations as required by the MFA, and seeking indemnification from HSO for any judgment entered against CITGO on the plaintiff's claims in the underlying lawsuits. The state court denied CITGO's motion for partial summary judgment on the ground that the indemnification agreement did not require HSO to indemnify CITGO against allegations of CITGO's own negligence.  Id. at 1-3.  HSO states that CITGO voluntarily dismissed its third-party claims against HSO in the state court cases after the summary judgment ruling.  Dkt. # 13, at 4.

On August 5, 2009,  CITGO filed this case against HSO alleging that (1) HSO breached the DFA by refusing to defend or indemnify CITGO; (2) HSO breached the DFA by failing to list CITGO as an additional insured on its liability insurance policy; (3) CITGO is entitled to contribution from HSO as to Perkins' claims; (4) HSO breached the MFA by refusing to defend and

indemnify CITGO; (5) HSO breached the MFA by failing to list CITGO as an additional insured on its liability insurance policy; and (6) CITGO is entitled to contribution from HSO as to Williams' claims.

## II.

Defendant argues that it is not subject to personal jurisdiction in Oklahoma and the case should be dismissed.  It also asserts that the Court lacks venue over the case or, if the Court finds that venue is proper, the case should be transferred to Missouri.  Plaintiff responds that the forum selection clause in the MFA is valid and enforceable, and defendant has consented to personal jurisdiction and venue in Oklahoma.

## A.

The first issue is the enforceability of the forum selection clause, because resolution of this issue may moot plaintiff's objections to personal jurisdiction and venue in whole or in part.  Plaintiff argues that defendant consented to personal jurisdiction and venue in the state and federal courts of Oklahoma, and the Court may assert personal jurisdiction over defendant based on the forum selection clause.  Defendant argues that only the MFA contains a forum selection clause and it did not consent to personal jurisdiction or venue in Oklahoma for any claims other than those arising under the MFA.  Defendant also asserts that plaintiff waived the forum selection clause by asserting third-party claims in the underlying state court lawsuits.

"A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3)."  Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 956 (10th Cir. 1992).  On a Rule 12(b)(3) motion, the Court may consider matters outside the pleadings and the Court is not required to accept the allegations of the

4

complaint as true to the extent that the allegations of the complaint are controverted by other evidence.  See Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, 471 F.3d 544, 549-50 (4th Cir. 2006); Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundait Liberty, 408 F.3d 1250, 1254 (9th Cir. 2005); Pierce v. Shorty Small's of Branson Inc., 137 F.3d 1190, 1192 (10th Cir. 1998); Vazquez v. Central States Joint Bd., 547 F. Supp. 2d 833, 865 n.18 (N.D. Ill. 2008).  However, the Court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party."  Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

Forum selection clauses are presumed to be valid and the burden is on the party resisting enforcement to show that enforcement of the clause would be unreasonable under the circumstances. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 589 (1991); M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342, 1346 (10th Cir. 1992). The party resisting enforcement of a forum selection provision "carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances."  Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 957 (10th Cir. 1992).  The Tenth Circuit has found that forum selection clauses fall into two general categories - mandatory or permissive.  Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318, 321 (10th Cir. 1997).   A mandatory selection clause must contain "clear language showing that jurisdiction is appropriate only in the designated forum."  Id. (quoting Thompson v. Founders Group Int'l, 886 P.2d 904, 910 (Kan. Ct. App. 1994).  A permissive forum selection clause permits suit to brought in a particular jurisdiction, but does not prevent the parties from litigating in a different forum.  SBKC Serv. Corp. v. 1111 Prospect Partners, L.P., 105 F.3d 578, 581-82 (10th Cir. 1997).

Plaintiff alleges separate claims that HSO breached the DFA and the MFA, but only the MFA contains a forum selection clause.[1]  The forum selection clause states that HSO "consents to jurisdiction and venue in the state and federal courts located within Oklahoma," but it does not explicitly state what claims fall within the scope of the clause.  It merely states that HSO "consents" to the jurisdiction of the state and federal courts in Oklahoma.  To limit the scope of the clause and avoid an unreasonable interpretation of the clause, the Court will assume that the parties intended to limit HSO's consent to personal jurisdiction and venue in Oklahoma as to claims arising under the MFA only.

Defendant argues that plaintiff waived enforcement of the forum selection clause by filing a third-party complaint in the underlying state court lawsuits, but cites no authority supporting its argument that this act constitutes a waiver.  Under Oklahoma law, a party has no obligation to file a claim for contribution or indemnification until a judgment is entered in the underlying dispute for which contribution or indemnification is sought.  State Farm Mut. Auto. Ins. Co. v. Perry, 104 P.3d 1136, 1138 (Okla. Civ. App. 2004); Cockings v. Austin, 989 P.2d 136, 140 (Okla. 1995).  This is also true under Missouri law.  See State ex rel. General Elec. Co. v. Gaertner, 666 S.W.2d 764, 766 (Mo. 1984) (right to contribution or indemnification can be enforced in a separate suit after judgment is entered in the original lawsuit giving rise to the claim for contribution or

---

[1]     Although not addressed by the parties, the Court finds that the forum selection clause may actually be a venue selection clause.  A true forum selection clause "applie[s] only to agreements which clearly confine litigation to specific tribunals to the exclusion of all others," while a venue selection provision may permit litigation in multiple acceptable tribunals.  SBKC Serv. Corp., 105 F.3d at 582.  However, the difference is unimportant to resolution of this motion and the relevant contractual provision could reasonably be construed as a permissive forum selection clause.  See Excell, Inc., 106 F.3d at 321 (a permissive forum selection clause authorizes, but does not require litigation, in a specified forum).

indemnification).   Defendant claims that CITGO was not obligated to assert its claims for contribution or indemnification in the underlying state court cases, and it waived its right to litigate any claims in Oklahoma by asserting its claims in a Missouri state court.  However, CITGO did not choose Missouri state court as the forum, because it was named as a defendant in the underlying state court cases.  When the underlying state court cases settled, CITGO voluntarily dismissed its third-party complaints in both state court cases and filed a new lawsuit in this Court.  These acts cannot reasonably be construed as an intentional waiver of CITGO's right to litigate claims under the MFA in Oklahoma state or federal courts.[2]  CITGO did not delay in seeking an Oklahoma forum, but filed a new case in Oklahoma almost as soon as the plaintiff's claims in the underlying state court cases were dismissed.  The cases cited by defendant stand for the proposition that a party may waive enforcement of a forum selection clause by taking an intentional act inconsistent with enforcement of the forum selection clause.  See Licensed Practical Nurses, Technicians and Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc., 131 F. Supp. 2d 393 (S.D.N.Y. 2000) (the parties agreed to submit a contractual time limitation issue to the court for resolution and defendant "intelligently and voluntarily" waived its rights under a forum selection clause contained in the same contract); Unity Creations, Inc. v. Trafcon Indus., Inc., 137 F. Supp. 2d 108 (E.D.N.Y. 2001) (defendant maintained the right to remove a case to federal court, although the parties' forum selection clause designated a state court forum, because the forum selection clause was ambiguous and the plaintiff filed the lawsuit in a different state court than that specified in the parties'

---

[2]     Defendant argues that CITGO voluntarily dismissed its third-party claims "[o]nly after it became apparent to [CITGO] in the state court that [CITGO] was likely to lose its breach of contract claims based on the indemnity provisions of the contracts . . . ."  This does not show that CITGO waived enforcement of the forum selection clauses.

agreement); <u>Building Constr. Enters., Inc. v. Gary Meadows Constr. Co., Inc.</u>, 2007 WL 1041003,

*4 (E.D. Ark. Apr. 4, 2007) (the plaintiff waived its rights to litigate the case in state court by filing

the case in federal court).  While CITGO did not have to file contribution or indemnification claims

in the underlying state court cases, CITGO did not choose to be sued in Missouri state court and it

could not have transferred those cases to Oklahoma.  There is an important difference between

initially filing a complaint in a forum other than the one designated in a forum selection clause and

asserting third-party claims in a forum selected by a third-party to the contract containing the forum

selection clause, and the Court finds that filing contribution and indemnification claims in a forum

selected by another party is not sufficient to waive enforcement of a permissive forum selection

clause.

Defendant also argues that the DFA does not contain a forum selection clause, and the forum

selection clause in the MFA cannot be used as a basis to obtain personal jurisdiction over defendant

for any other claims. Dkt. # 13, at 7.  Plaintiff does not respond to this argument.  The Court agrees

that it would be unreasonable to apply the forum selection clause to any claims other than those

alleging a breach of the MFA.  The inclusion of a forum selection clause in the MFA shows that the

parties knew how to bargain for and include a forum selection clause, and the absence of a forum

selection clause in the DFA supports defendant's argument that it did not agree to litigate claims

arising under the DFA in Oklahoma.  Any ambiguity in a forum selection clause should be construed

against the drafter and, in this case, CITGO drafted the forum selection clause and failed to specify

the claims to which the forum selection clause applied.  <u>K & V Scientific, Co, Inc. v. Bayerische

Motoren Werke Aktiengesellschaft</u>, 314 F.3d 494, 500 (10th Cir. 2002).  The Court finds that

8

CITGO may not rely on the forum selection clause as a basis to show that defendant consented to personal jurisdiction or venue for any claims not arising under the MFA.

**B.**

Defendant argues that it is not subject to personal jurisdiction in Oklahoma because it does not have sufficient contacts with Oklahoma to permit this Court to assert personal jurisdiction over defendant.  Plaintiff responds that defendant purposefully entered a business transaction with a company conducting business in Oklahoma, and defendant is subject to personal jurisdiction in Oklahoma by purposefully directing activities to this forum.

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over each defendant.  OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998).  "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."  Id. (citations omitted).  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  Id. at 1091.  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"  Id.  (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).  The allegations of the complaint must be accepted as true to the extent they are uncontroverted by the defendant's affidavit.  Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990).  If the parties provide conflicting affidavits, all factual disputes must be resolved in plaintiff's favor and a prima facie showing of personal jurisdiction is sufficient to overcome defendant's objection.  Id.

9

To demonstrate the existence of personal jurisdiction over a nonresident defendant in a diversity action, plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA. STAT. tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen, 444 U.S. at 291). The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction. A court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Intercon, 205 F.3d at 1247 (quoting Burger King, 471 U.S. at 472). "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state."

10

Intercon, 205 F.3d at 1247 (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)).

Defendant argues that it has never sent its officers or employees to Oklahoma for any reason, and it does not advertise or conduct business in Oklahoma.  David Mangelsdorf, President of HSO, states that he "had minimal contact with anyone in Oklahoma in negotiating both the 1990 Distributor Franchise Agreement and the 2005 Marketer Franchise Agreement at issue in this matter, and my only contact with anyone in the state of Oklahoma was limited to very few telephone conversations with CITGO personnel and forwarding of the executed 1990 and 2005 agreements to CITGO personnel in Oklahoma."  Dkt. # 12, Ex. 4, at 2.  HSO does not own property or conduct business in Oklahoma and, even though CITGO may have executed the DFA and MFA in Oklahoma, HSO did not send a representative to Oklahoma to negotiate the contracts or execute the documents.  Id. at 1-2.  HSO admits that it knew that CITGO maintained an office in Tulsa and it occasionally communicated with CITGO's Tulsa office, but argues that none of these contacts show any intention to conduct business in Oklahoma or avail itself of the protection of the laws of Oklahoma.  Dkt. # 30, at 11.  HSO also states that CITGO is a Delaware corporation with its principal place of business in Houston, Texas and HSO is a Missouri corporation with its principal place of business in Barnhart, Missouri, and neither company maintains its headquarters in Oklahoma.  Id. at 15.

CITGO responds that it can identify sufficient minimum contacts to show that HSO is subject to personal jurisdiction in Oklahoma.  CITGO argues that the forum selection clause is evidence that HSO is amenable to personal jurisdiction in Oklahoma, even it is inapplicable to all claims.  Dkt. # 25, at 21.  The DFA states that CITGO maintains a place of business in Tulsa and that the DFA

11

"shall be governed by the laws of the State of Oklahoma." Dkt. # 25, Ex. A, at 1, 16.  CITGO's representative in the transaction, John Dillingham, was located in Tulsa and signed the DFA in Tulsa. Dkt. # 25, Ex. 1, at 1-2.  Subsequent amendments of the DFA were drafted in CITGO's Tulsa office and HSO sent the amendments to Tulsa after executing them.  Id. at 2.  The MFA also stated that CITGO maintained a place of business in Tulsa, and HSO returned the executed MFA to CITGO's Tulsa office.  Id. at 3.  The MFA contained an Oklahoma choice of law provision and a forum selection clause designating Oklahoma as a permissible forum for claims arising under the MFA.  Id., Ex. G, at 10.  CITGO operates a web-based access portal called MarketNet that allows "distributors, like HSO, to monitor its account balance and locate branding information, EFT notices and point of sale equipment information," and the server is located in Tulsa.  Id., Ex. 1, at 6.  Between 2004 and 2006, HSO sent seven letters or e-mails to CITGO's Tulsa office requesting the addition of motor fuel carriers to HSO's account.  Id. at 12-14.  HSO also sent financial statements to CITGO's Tulsa office when applying for a line of credit from CITGO and  paid invoices through an Electronic Funds Transfer system that is physically located in Tulsa.  Id. at 13.  CITGO also sends distributors pricing information from a computer system located in Tulsa.  Id. at 14.

CITGO argues that the Court can exercise general personal jurisdiction due to HSO's consistent and regular business dealings with CITGO's Tulsa office.  However, the contacts identified by CITGO occurred over a period of 17 years and the evidence shows that HSO's contacts with CITGO's Tulsa office were sporadic.  The evidence shows that CITGO maintained a presence in Tulsa, but there is no evidence that HSO purposefully availed itself of the right to conduct business in Oklahoma or regularly directed its activities toward this forum.  To the contrary, HSO conducted business in Missouri and occasionally sent correspondence to CITGO's Tulsa office.

While conducting business with an Oklahoma corporation can be strong evidence that a defendant has subjected itself to the jurisdiction of the forum, CITGO is a Delaware corporation with its principal place of business in Texas and HSO did not intentionally direct any activity to an Oklahoma business. Oklahoma has a strong interest in providing a forum to protect its own citizens, but defendant is not a citizen of Oklahoma. Burger King Corp., 471 U.S. at 473-74. The Court finds that HSO did not generally subject itself to the jurisdiction of Oklahoma courts for any type of claim, and the Court may not exercise general personal jurisdiction over HSO.

CITGO asserts that the Court may exercise specific personal jurisdiction over defendant based on the forum selection clause and defendant's contacts with Oklahoma related to execution and performance of the DFA and MFA. HSO did "consent" to the jurisdiction of Oklahoma state and federal courts in the MFA, and this shows that HSO could reasonably have expected to be haled into a court in Oklahoma to litigate disputes arising under the MFA. HSO attempts to downplay its contacts with CITGO related to negotiation and execution of the DFA, but both contracts show that HSO knew that it was negotiating with CITGO's Tulsa office and it would be required to contact the Tulsa office when conducting business with CITGO. The DFA and MFA also contained a choice of law provision stating that Oklahoma law would govern claims arising under the agreements. While HSO's contacts with Oklahoma were not so continuous and systematic that HSO could be required to litigate any claim in Oklahoma, HSO could reasonably have foreseen litigating disputes arising under the DFA and MFA in Oklahoma.

Even though the Court has found that it has specific personal jurisdiction over defendant, the Court must also consider whether the assertion of personal jurisdiction over [defendant] "comport[s] with 'fair play and substantial justice.'" Trujillo v. Williams, 465 F.3d 1210, 1221 (10th Cir. 2006)

(quoting <u>Equifax Servs., Inc. v. Hitz</u>, 905 F.2d 1355, 1359 (10th Cir. 1990)).  The Court must consider five factors to determine if the exercise of personal jurisdiction over defendant would be reasonable:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

<u>Id.</u> (quoting <u>Pro Axess, Inc. v. Orlux Distrib., Inc.</u>, 428 F.3d 1270, 1279-80 (10th Cir. 2005)).  In this case, HSO consented to litigate certain claims in Oklahoma and the parties agree that Oklahoma law governs all claims under the DFA and MFA.  Thus, Oklahoma has a substantial interest in having a court within Oklahoma decide issues of Oklahoma law.  This weighs heavily in favor of finding that traditional notions of fair play and substantial justice will not be offended if defendant is required to defend against CITGO's claims in this Court.  Defendant argues that it is a small corporation with fewer resources than CITGO and many witnesses with relevant information are located in Missouri.  Dkt. # 30, at 11.  Defendant also argues that a federal district court in Missouri will have no difficulty applying Oklahoma law.  <u>Id.</u>  While there is some burden on defendant if the case is litigated in Oklahoma, defendant agreed to litigate claims arising under the MFA in Oklahoma and this suggests that this burden is not so substantial that requiring defendant to litigate this case in Oklahoma would violate traditional notions of fair play and substantial justice.  It would also be preferable to have a court familiar with Oklahoma law rule on plaintiff's breach of contract, indemnification, and contribution claims that the parties agreed would be governed by Oklahoma law. Defendant has not presented a "compelling" case that the assertion of personal jurisdiction over

14

defendant would be unreasonable, and defendant's motion to dismiss for lack of personal jurisdiction is denied. Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1359 (10th Cir. 1990).

## C.

HSO argues that, even if the Court were to find that HSO is subject to personal jurisdiction in Oklahoma, a substantial part of the events giving rise to this case did not occur in the Northern District of Oklahoma and venue is improper.  In the alternative, HSO asks the Court to transfer venue of the case to the Eastern District of Missouri.

Under 28 U.S.C. § 1391, a civil action "founded only on diversity of citizenship may . . . be brought only in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."  Venue may be proper in more than one district in which a substantial part of the events giving rise to the claim occurred. Wilson v. Qorvis Communications, LLC, 2007 WL 4171567 (W.D. Okla. 2007).  The plaintiff does not have to establish that its chosen venue "has the most substantial contacts to the dispute; rather, it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere." Nat'l Council on Compensation Ins. Inc. v. Caro & Graifman, P.C., 259 F. Supp. 2d 172 (D. Conn. 2003) (quoting Indymac Mortgage Holdings Inc. v. Reyad, 167 F. Supp. 2d 222, 237 (D. Conn. 2001)).  The Court must determine whether "the forum activities played a substantial role in the circumstances leading up to the plaintiff's claim.  If the selected district's contacts are 'substantial,' it should 'make no difference that another's are more so, or the most so.'" Crowe & Dunlevy, P.C. v. Stidham, 609 F. Supp. 2d 1211, 1221 (N.D. Okla. 2009).

Defendant argues that the forum selection clause is irrelevant to the venue analysis, because CITGO waived the forum selection clause by bringing third-party claims in the underlying lawsuit.

15

Without the forum selection clause, defendants asserts there is no basis to find that a substantial part of the events giving rise to plaintiff's claims occurred in the Northern District of Oklahoma. Defendant claims that the only facts occurring in this judicial district are that CITGO was formerly headquartered in Tulsa and CITGO's executed the DFA and MFA in Tulsa.  Plaintiff responds that the forum selection clause is highly relevant and shows that defendant has consented to venue in the Northern District of Oklahoma.  Plaintiff also asks the Court to consider the facts used to establish defendant's minimum contacts with this forum as a basis to find that a substantial part of the events giving rise to this case occurred here.

The Court finds that a substantial part of the events giving rise to plaintiffs' claims occurred in Tulsa, and venue is proper in this Court.[3]  The Court has already determined that plaintiff did not waive the forum selection clause and the forum selection clause is relevant to the venue analysis. Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995) (if the parties executed a valid forum selection clause, the party opposing enforcement of the agreement bears the burden to show that venue is improper).  While the forum selection clause is, at most, a permissive forum selection clause, it shows that parties agreed that Oklahoma was an appropriate forum to litigate disputes arising under the MFA, even if some other forum might also be appropriate.  Dorel Steel Erection Corp. v. Capco Steel Corp., 392 F. Supp. 2d 110, 114 (D. Mass 2005).  There are also other factors aside from the forum selection clause showing that venue is appropriate in this forum.  Plaintiff's claims concern the application of indemnification clauses contained in the DFA and MFA, and these

---

[3]     CITGO suggests that venue is proper under § 1391(c) because defendant is subject to personal jurisdiction in Oklahoma.  However, § 1391(c) applies only "if there is no district in which the action may otherwise be brought."  CITGO has not shown that no other federal court would have venue over this case, and § 1391(c) is inapplicable.

16

contracts were negotiated by CITGO through its Tulsa office.  Defendant corresponded with CITGO through its Tulsa office, and this includes returning the executed agreements to CITGO's Tulsa office.  Plaintiff also alleges that HSO periodically contacted its Tulsa office to negotiate amendments to DFA or MFA.  These contacts are directly related to plaintiff's claims for breach of contract and indemnification against defendant.  Defendant consented to litigate claims arising under the MFA in Oklahoma and agreed that Oklahoma law would govern claims arising under the DFA and MFA.  It is possible that another forum could have venue over this case or would even be a better forum.  However, this consideration is not relevant, and the sole issue before the Court is whether a substantial part of the events giving rise to plaintiff's claims occurred in this forum.  See Crowe & Dunlevy P.C., 609 F. Supp. 2d at 1221; Decision Point Technologies, Inc. v. Johnson, 2006 WL 3779799, *2 (E.D. Mo. 2006).  Plaintiff has shown that a substantial part of the events giving rise to this case occurred in this judicial district, and venue is appropriate in this Court.

In the alternative, defendant asks the Court to transfer this case to the Eastern District of Missouri, because that would be more convenient forum.  Under 28 U.S.C. § 1404(a), a court may transfer a case to any judicial district in which it could originally have been filed "[f]or the convenience of parties and witnesses."  The Tenth Circuit has identified several factors that should be considered by a district court when ruling on a motion to transfer:

> the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws, the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

17

Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991).  When a party files a motion to transfer venue, the moving party has the burden to prove inconvenience to the parties and witnesses.  Rivendell Forest Prods., Ltd., v. Canadian Pacific Ltd., 2 F.3d 990, 993 (10th Cir. 1993).  Unless the moving party carries its burden to prove inconvenience to the parties and witnesses and the balance is "strongly" in favor of the moving party, the plaintiff's choice of forum should not be disturbed.  Scheidt v. Klein, 956 F.2d 963, 965 (10th Cir. 1992).

The existence of a forum selection clause selecting Oklahoma as an appropriate forum weighs heavily against transferring this case to the Eastern District of Missouri.  See Astro-Med, Inc. v. Nihon Kohden America, Inc., ___ F.3d ___, 2009 WL 3384786*8 (1st Cir. Oct. 22, 2009) ("Where the contract between the parties . . . contains a forum-selection clause, the clause 'will be a significant factor that figures centrally in the District Court's calculus"); Method Electronics, Inc. v. Delphi Automotive Systems LLC, 639 F. Supp. 2d 903, 908 (N.D. Ill. 2009) ("the presence of a forum selection clause is relevant both as a matter of convenience and as an interest of justice: it is 'a significant factor that figures centrally in the district court's calculus'")).  However, the forum selection clause is not the only consideration and the Court must consider other factors concerning the convenience of the parties and witnesses when reviewing defendant's request to transfer venue. Stewart Organization Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988) ("The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration . . . nor no consideration . . ., but rather the consideration for which Congress provided in § 1404(a))".

Defendant argues that most of the witnesses and other relevant evidence are located in Missouri and this strongly supports its request to transfer the case to the Eastern District of Missouri.

18

Dkt. # 30, at 21.  However, defendant does not specifically identify any witnesses located in Missouri who will likely be asked to give depositions or testify at trial.  It is reasonable to assume that defendant's President, David Mangelsdorf, will be asked to testify and he is located in Missouri, and there may be other unidentified witnesses with knowledge of the claims in the underlying state court lawsuits who are also located in Missouri.  CITGO responds that it has identified six witnesses located in Tulsa with knowledge of the formation of the DFA and MFA, as well as the ongoing relationship between CITGO and defendant.  Dkt. # 25, at 9.  It would certainly more convenient for defendant to litigate this case in the Eastern District of Missouri, but the Court must consider the fairness of transferring venue as to all parties and witnesses. Based on the allegations by the parties, the Court concludes that convenience of the parties and witnesses may somewhat favor transfer of venue to the Eastern District of Missouri, but this factor does not tip strongly in favor of transfer.

The Court will next consider several factors concerning the fairness of requiring defendant to litigate plaintiff's claims in this forum.  Defendant claims that it will be unable to subpoena necessary witnesses or documents, because much of the relevant proof is located in Missouri and is outside of the Court's subpoena power.  Dkt. # 13, at 10.  Defendant also argues that it will be expensive for it to litigate here, while CITGO is better able to bear the expense of litigating its claims in a more distant forum.  Defendant's argument that necessary witnesses and evidence are located outside the Court's subpoena power is speculative.  To the extent that relevant evidence and witnesses are within the control of the parties, the parties must participate in discovery and comply with the Court's discovery orders.  Defendant has not identified any evidence that will fall outside of the discovery process between the parties, and the Court declines to speculate that other evidence may be in the control of third-parties not subject to the Court's subpoena power.  Concerning

19

defendant's argument about who should bear the burden of litigating in a distant forum, defendant agreed to litigate any claims arising under the MFA in Oklahoma and it could have reasonably expected to bear this burden when it executed the MFA.  These arguments do not suggest that it would be unfair to require defendant to litigate in this Court.

The Court also finds it significant that the parties agreed that Oklahoma law would govern claims arising under the DFA and MFA.  Defendant argues that "there is no greater advantage in having an Oklahoma federal court determine the legal issues . . . over that of a Missouri federal court determining the same."  Dkt. # 30, at 22.  Even assuming that defendant were correct, this does not show that it is preferable for a federal district court located in Missouri to decide issues of Oklahoma law, and defendant has the burden to show that venue should be transferred.  Defendant may be correct that CITGO's claims for contribution do not fall within the choice of law provisions of the DFA or MFA.  Id.  This suggests some of claims may be governed by Missouri law and the choice of law factor does not weigh in favor of either party, but it does not support transfer to another forum.  However, at least four of the six claims arise under the contracts and are governed by Oklahoma law, and there is a significant advantage in having a federal district court located in Oklahoma decide these claims.  The Court finds that choice of law issues favor keeping this case in the Northern District of Oklahoma and, even if the Court accepted defendant's arguments, this factor would not support transfer of this case to another forum.

Considering all of the parties' arguments, the Court finds that defendant's motion to transfer venue over this case to the Eastern District of Missouri should be denied.  The parties agreed to litigate claims arising under the MFA in Oklahoma, and they agreed that all claims arising under the DFA and MFA would be governed by Oklahoma law.  The Court will not lightly set aside the

20

parties' agreements to litigate claims in Oklahoma and to apply Oklahoma law, unless defendant can show that the other § 1404(a) factors tip strongly in favor of transfer.  Defendant has shown that it would be more convenient for defendant, and perhaps some third-party witnesses, if the case were transferred to the Eastern District of Missouri, but defendant has not carried its burden to show that the parties' forum selection clause and plaintiff's choice of forum should be disregarded.  Therefore, defendant's motion to dismiss for improper venue or to transfer venue to another forum should be denied.

**IT IS THEREFORE ORDERED** that the Motion of Home Service Oil Company to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction or in the Alternative, Motion to Dismiss or Transfer for Improper Venue (Dkt. ## 12, 15) is **denied**.

**DATED** this 30th day of November, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

21